UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHARLES FARNSWORTH,<br><br>    Petitioner,<br><br>    v.<br><br>ANTHONY QUINN,<br><br>    Respondent. | Case No. C07-5155RJB<br><br>REPORT AND RECOMMENDATION<br><br>**NOTED FOR:**<br>**September 28, 2007** |

    This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 (b) and local Rules MJR 3 and 4. Petitioner alleges a Procedural Due Process violation because his trial was 69 days after arraignment excluding the time he spent at Western State Hospital for a competency evaluation (Dkt. # 14 and 17).

    The claim fails both as a Sixth Amendment violation of the speedy trial rule claim and a Fourteenth Amendment Due process claim. The court recommends the petition be **DENIED.**

<u>FACTS</u>

    Petitioner was convicted in Pierce County of two counts of first degree robbery, committed

REPORT AND RECOMMENDATION- 1

on March 9, 2004. (Dkt. # 15, Exhibit 1). Petitioner was sentenced to 68 months (Dkt. # 15, Exhibit 3). The Washington State Court of Appeals summarized the facts surrounding the crimes as follows:

> 1. The Robberies.
>
> On March 9, 2004, Charles Farnsworth used a handgun to rob $250 from a Subway restaurant clerk. The clerk described the robber as a white male, between 40 and 50 years old, wearing a hat, black and blue square glasses, a black and blonde wig, a nose brace that covered his face, and a grey jumpsuit.
>
> Less than two hours later, a Domino's Pizza restaurant reported to police that he had been robbed at gunpoint. This clerk described the robber as a white male in his early forties, wearing a hat, a black and grey wig, a green jumpsuit, black gloves, and a piece of tape or band-Aids across his nose and check. The clerk saw the man drive off in a brown-colored vehicle. When police arrived, they spotted a four-door Chrysler sedan apparently abandoned in a turn lane down the street.
>
> The officers approached the car, looked inside, and saw a black/grey wig and black gloves in plain view. The officers discovered that the vehicle was registered to Adam Homer, who had loaned or sold it to Charles Farnsworth.
>
> 2. Investigation
>
> On March 11, 2004 both restaurant clerks viewed six photos of white males, aligned side by side. The Subway clerk identified Farnsworth as the robber, the Domino's Pizza clerk was unable to make a positive identification.
>
> On March 12, 2004, the officers executed a search warrant for Farnsworth's car, in which they discovered a wig, gloves, used band aids, and a return receipt from Shuck's Auto Supply. According to Shuck's records, a customer named "Charles Farnsworth" had returned an oil filter on March 10, 2004.
>
> On March 15, 2004, the officers arrested Farnsworth for two counts of robbery and presented him with a search warrant for his home and a blood sample. They also detained Melody Norman, Farnsworth's girlfriend, for questioning and presented her with the search warrant as well. The officers read their *Miranda* rights to Farnsworth and Norman, who acknowledged that they understood. In Farnsworth's home, the officers found several pairs of blue glasses, a roll of white tape, and a first aid kit.
>
> The officers took Farnsworth and Norman to the police station for an interview. One officer gave Farnsworth a written copy of his *Miranda* rights and read them to him. Farnsworth initially denied involvement in the robberies. But when the officers confronted him with evidence they had discovered, Farnsworth confessed that he had committed the robberies, told officers details of the robberies, and explained where they could find the pellet gun he had used in the robberies. After reading Farnsworth his *Miranda* rights again, the officers recorded his confession.
>
> Norman also agreed to provide the police with a recorded statement.

REPORT AND RECOMMENDATION- 2

Following a reading of her *Miranda* rights, she stated that Farnsworth had mentioned that he wanted to commit a robbery and, after the fact, told her that he robbed Subway and a pizza place. Like Farnsworth, she changed the details of her story several times before the officers recorded her statement.

3. Procedure

    A. Pretrial Chronology.

On March 17, 2004, the State charged Farnsworth with two counts of first degree robbery, Following arraignment that same day, the superior court scheduled trial to begin on May 4. Farnsworth remained in custody. He voiced no objection to the trial date.

On April 8, at the State's request, the trial court ordered a mental competency examination and stayed the proceedings pending this examination. Farnsworth did not object.

On June 10, the trial court found Farnsworth to be competent, and then reset trial for July 27. Farnsworth did not object to this new trial date.

    B. Motion to Dismiss

        1. Cr. R 3.3

On the day set for trial, July 27, 2004, Farnsworth moved to dismiss the charges because his trial did not commence within the 60-day period required under CrR3.3. He contended that by the time of the July 27 rescheduled trial date, 69 days had passed, since his arraignment, excluding the time for his competency proceedings.

The trial court denied Farnsworth's motion to dismiss, ruling that because Farnsworth had failed to object within 10 days of the notice of the July 27 trial date, he had waived his right to object under CrR3.3.

(Dkt. # 15, Exhibit 3, pages 2 to 5).

## EVIDENTIARY HEARING

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996).

REPORT AND RECOMMENDATION- 3

Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

## STANDARD

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. <u>Engle v. Isaac</u>, 456 U.S. 107 (1983). Section 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law. <u>Lewis v. Jeffers</u>, 497 U.S. 764 (1990); <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## DISCUSSION

<u>Speedy trail under the Sixth Amendment</u>.

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. U.S. Const. amend. VI. This right to speedy justice "is as fundamental as any of the rights secured by the Sixth Amendment." <u>Klopfer v. North Carolina</u>, 386 U.S. 213, 223 (1967). To evaluate alleged violations of a defendant's Sixth Amendment right to a speedy trial, the court must balance:

REPORT AND RECOMMENDATION- 4

(i) the length of delay; (ii) the reason for the delay; (iii) the defendant's assertion of his right; and (iv) Prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972). There is no bright line test for determining with precision if an accused's speedy trial right has been violated. Instead, the reviewing court is to apply a flexible "functional analysis" of the right in the context of the case, weighing these four different factors.

The four factor test set forth in Barker also has a preliminary test. It is first necessary to determine if the delay breaks the threshold point of presumptive prejudice. If it does not, the inquiry is over and it is unnecessary to consider the other Barker factors. Doggett v. United States, 505 U.S. 647, 651-52, (1992); United States v. Beamon, 992 F.2d 1009, 1012 (9th Cir. 1993). The threshold point is defined in Doggett at 505 U.S. 652, n.1, the court states that delay has been found "presumptively prejudicial" at least as it "approaches one year." If delay, then, is measured only in months and less than a year, presumptive prejudice has not attached, the petitioner has failed the preliminary inquiry, has established no prejudice, and the analysis ends. Here, the time between arraignment and trial was 69 days excluding the time for a competency evaluation. Petitioner's argument is without merit.

Procedural Due Process claim.

Petitioner argues a Fourteenth Amendment due process violation as a result of the trial court not dismissing his charges because of an alleged violation of the state court's Criminal Rule 3.3. The court held petitioner had Waived his right to object because he did not object within 10 days of the ruling (Dkt # 15, Exhibit 3, page 5).

While petitioner's argument attempts to elevate the facts of this case to an issue of constitutional dimension, the fact remains that CrR 3.3 is a rule of state law. The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law. Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991). This petition is without merit and should be dismissed.

## CONCLUSION

This petition is without merit. Accordingly, the petition should be **DISMISSED WITH**

REPORT AND RECOMMENDATION- 5

1  **PREJUDICE.**

2      Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure,
3  the parties shall have ten (10) days from service of this Report to file written objections. *See also*
4  Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes
5  of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule
6  72(b), the clerk is directed to set the matter for consideration on **August 17, 2007**, as noted in the
7  caption.

      Dated this 4 day of September, 2007.

                            */S/ J. Kelley Arnold*
                            J. Kelley Arnold
                            United States Magistrate Judge

REPORT AND RECOMMENDATION- 6